596 F.Supp. 112 (1984)
VOLLMAR BROS. CONSTRUCTION CO., Federal Barge Lines, Inc., and the United States of America by and through the United States Army Corps of Engineers, Plaintiffs,
v.
ARCHWAY FLEETING & HARBOR SERVICE, INC. and Consolidated Grain and Barge Company, Defendants,
v.
AZALEA FLEET, INC., Third party defendant,
v.
DREYFUS SUPPLY AND MACHINERY CORP., Fourth party defendant,
v.
EQUITABLE SHIPYARDS, INC., Fifth party defendant,
v.
DIBERT, BANCROFT & ROSS CO., LTD., Sixth party defendant.
Nos. 82-0331A(C), 83-849-A(C).
United States District Court, E.D. Missouri.
August 28, 1984.
*113 *114 William Bay, St. Louis, Mo., for plaintiffs.
James Herron, St. Louis, Mo., for Consolidated.
Joseph Murphy, St. Louis, Mo., for Archway.
Donald James, St. Louis, Mo., for Azalea.
John Sandberg, St. Louis, Mo., for Dreyfus.
Thomas Walsh, St. Louis, Mo., for Lone Star Ind.
R.E. Keaney, St. Louis, Mo., for Equitable.
Denis Burns, St. Louis, Mo., for Dibert, Bancroft & Ross Co., Ltd.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, District Judge.
This case was tried to the court. After consideration of the pleadings, the testimony and exhibits introduced at trial, the depositions, the credibility of witnesses, the parties' supplemental briefs, and the applicable law, the court makes the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is adopted as such, and conversely, any conclusion of law equally applicable as a finding of fact is so adopted.

FINDINGS OF FACT
1. This case arises out of a breakaway on the afternoon of 9 April 1980. The facts of the breakaway are set out in Eagle Marine Industries v. Valley Line Co., 541 F.Supp. 297, 298-99 (E.D.Mo.1982), aff'd Consol. Grain & Barge v. Archway Fleeting & Harbor, 712 F.2d 1287, 1289 (8th Cir.1983).
2. Vollmar Bros. Construction Co., Federal Barge Lines, Inc., Archway Fleeting & Harbor Service, Inc., Consolidated Grain and Barge Company, Azale Fleet, Inc., Dreyfus Supply and Machinery Corp., Equitable Shipyards, Inc., and Dibert, Bancroft & Ross Co., Ltd., are and were at all relevant times, corporations organized and existing under law. Azalea and Dreyfus are sellers of timberheads, as defined in § 402A Restatement (Second) of Torts.
3. The evidence in this cause establishes that the port bow timberhead of the Jackie 21 was defective. The defect was a latent one which was not apparent at the time this barge was delivered to Archway for fleeting. Because of such defect, the Jackie 21 was unseaworthy: Consolidated breached its continuing and nondeiegable duty to deliver to Archway a seaworthy barge.
4. The very purpose of the timberhead was to enable the fleeter to tie to it the *115 face wires of the harbor boat. Archway was entitled to assume that the timberhead would withstand reasonable stresses when, as in this case, there was no slack in the face wires. However, the pressure placed upon it, when the pilot of the M/V John F. Walker applied full starboard rudder, caused the timberhead to fracture, thus dooming the tow. The resultant stress was reasonably to be anticipated, and but for the defect, the timberhead would have been able to withstand the pressure.
5. The defect constituted an unreasonably dangerous condition; the defect rendered the timberhead unfit for its ordinary use. The defect was a proximate and contributing cause of the casualty.
6. The timberhead was being put to its ordinary use; such use was reasonable.
7. Said timberhead was the same timberhead sold by Dreyfus Supply and Machinery Corporation to Azalea Fleet, Incorporated.
8. After Azalea purchased said timberhead from Dreyfus, it sold the timberhead to Consolidated and installed it on the Jackie-21 in April 1974. When the timberhead was sold to Consolidated, Azalea was known as Alter Fleet, Inc. Azalea is and was in the business of marine repairs, and in connection with that business, sells deck fittings and timberheads.
9. Dreyfus purchased the timberhead in used condition from Lone Star Industries, Inc., in January 1973. The timberhead had been mounted on one of Lone Star's barges. Lone Star obtained the timberhead from its scrap pile. Lone Star's scrap pile contained many scrap items for use as replacements on barges, as needed by Lone Star. The breaking of timberheads is a very common event. No records were kept by Lone Star as to whether timberheads or other items were replaced or modified.
Equitable manufactured three barges for Lone Star in 1955, which included timberheads. Timberheads were removed from these barges and placed in Lone Star's scrap pile sometime between 1969 and 1972. The only evidence that the three timberheads which were sold to Dreyfus were the ones originally placed on Equitable's barges (sold to Lone Star) is the testimony of J.T. McDonnell, who stated that to the best of his knowledge, the three timberheads were not altered or changed by Lone Star until removal to its scrap pile, some 15 to 18 years later.
However, the scrap pile contained used equipment which Lone Star kept for spares and drew from in its day to day repair operations. There is no evidence as to whether the scrap pile may have contained other timberheads during the 18 years between 1955 and 1973.
10. Dreyfus measured the double bit it purchased from Lone Star. Comparison of the timberhead affixed to the Jackie 21 with those manufactured by Dibert shows timberheads  in this case, eight inch double bits  of different dimensions.
A price quote, bill of materials, and other letters between Dibert and Equitable, show that Equitable was contemplating purchasing the timberheads for its barges from Dibert. The evidence fails to show that such a sale was actually carried through. Even if it had been, the timberhead was of a different dimension than that sold by Dreyfus to Azalea, and therefore was not the same timberhead involved in this litigation.
11. The timberhead was in substantially the same condition at the time of the incident as when purchased by Dreyfus from Lone Star. It was not replaced after it was installed in April 1974 and prior to the breakaway incident on 9 April 1980. It was not repaired, welded, or altered in any way from the time it was installed on the Jackie 21 to the time of the breakaway.
12. Archway failed to use reasonable care and skill that prudent navigators would employ for similar services, involving the 9 April 1980 breakaway incident. Archway was thereby negligent, in that a prudent navigator would not have placed the M/V John F. Walker at the stern of the starboard string of barges. The placement of the M/V Katie at the stern of the center *116 string of barges improperly and adversely affected its ability to add the necessary horsepower with which to push the tow. Hence, when the timberhead fractured (but not prior thereto) the collision and breakaway were inevitable.
13. The defective timberhead and Archway's negligence were equal contributing causes of the casualty. Archway is liable for 50% of the damages caused. Consolidated is liable for 50% of the damages caused.
14. Prior to trial, the parties stipulated to the damages sustained by plaintiffs as a result of the breakaway. Vollmar Bros. Construction Co. sustained damages in the total amount of $28,490.41. Federal Barge Lines, Inc. sustained damages in the total amount of $60,800.00. The United States Army Corps of Engineers sustained damages in the total amount of $13,293.79.
15. The parties stipulated that Vollmar Bros. and Federal are entitled to receive pre-judgment interest on the total amounts of their respective damages, at the rate of 10% per annum from 15 May 1984.
16. In the Eagle Marine case, Consolidated paid a total of $105,782.27 in satisfaction of the judgment entered in favor of the various parties. Consolidated incurred expert witness fees in the amount of $5,025.86 in the Eagle Marine case in defense of claims arising out of the breakaway. Consolidated also sustained physical damage to its barges, for which it has not been compensated, in the amount of $11,345.61.
17. Consolidated vouched in Azalea in Cause No. 80-1119-A(B). Prior to trial in the Eagle Marine case, Consolidated gave written notice to Azalea, as seller of the defective timberhead, of the pendency of that action. It called upon Azalea to undertake its defense and indemnify it for any losses sustained by it as a result of the breakaway. Azalea refused to assume the defense of and refused to agree to indemnify Consolidated.
18. On 8 May 1984, the court granted Azalea's motion for summary judgment against Dreyfus. The relevant facts and law are set forth therein. See also Finding of Law No. 9, infra. Azalea thereby is entitled to indemnity from Dreyfus.
19. Azalea did not notify Dreyfus of the alleged defect or of the original suit concerning the timberhead, until after judgment in the original suit had been entered and was being appealed. Azalea was notified of the original action by Consolidated in July 1981. Azalea's search of its files turned up the fact that the timberhead was purchased from Dreyfus: Azalea found this information in June 1982.
20. Consolidated and Azalea had the opportunity to compromise their share of the damages in Eagle Marine. Archway had agreed to bear 80% of the damages in Eagle Marine and future claims. Consolidated passed the settlement offer to Azalea: Consolidated was prepared to accept Archway's offer if Azalea paid 10% of the total settlement and 10% of future judgments. Azalea refused. The defendants below Azalea object to Azalea's claim for indemnity, because they note that they were denied the opportunity to contribute 10% and settle the claim, whereas now Azalea seeks full indemnity for its 50% of the claim.
21. In May 1980, the Jackie 21 was delivered to Zito-Metcalf Repairs, Inc. in Louisiana for repairs which included removal of the baseplate of the timberhead in issue. The plate was discarded and has been unavailable for inspection or examination.
22. The court has reviewed Consolidated's request for attorney's fees. The court has carefully reviewed the reasonableness and necessity of the fees claimed, and has deducted amounts unrecoverable, as set out in the Conclusions of Law, herein. The court finds the recoverable amount of attorney's fees to be $25,682.56.
23. The court has reviewed Azalea's request for attorney's fees. The court has carefully reviewed the reasonableness and necessity of the fees claimed, and has deducted amounts unrecoverable, as set out in the Conclusions of Law, herein. The *117 court finds the recoverable amount of attorney's fees to be $4,274.50.

CONCLUSIONS OF LAW
1. This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1333. Venue is proper in this district.
2. Consolidated and Archway, as parties to the Eagle Marine case, are subject to collateral estoppel and are bound by the findings of fact and conclusions of law entered by the court in Eagle Marine, insofar as they are applicable herein. See Oldham v. Pritchett, 599 F.2d 274, 276-81 (8th Cir.1979).
3. Azalea, having been vouched in, in the Eagle Marine case, is concluded by the judgment entered in that case against Consolidated; Azalea is bound by the court's findings of fact and conclusions of law therein. See Lane v. Hartford Fire Insurance Co., 343 F.Supp. 79, 85 (E.D.Mo.1972).
Azalea Fleet, Inc. is successor in interest and liability to Alter Fleet, Inc.
4. Since neither Dreyfus, Equitable, nor Dibert was a party to the previous action, they are not bound by any determination of damages, timberhead defect, or other issues. However, as a matter of fact and law  in the case at bar  the court has found the damages, defect, and other issues, as herein set out.
5. Admiralty suits are governed by federal substantive law. Alcoa Steamship Co. v. Charles Ferran and Co., 383 F.2d 46, 50 (5th Cir.1967). This court has previously borrowed from the Uniform Commercial Code as part of federal admiralty law, as well as from the Restatement (Second) of Torts. See Court's Memorandum, 29 August 1983.
6. Azalea is not guilty of laches or other delay in failing to promptly notify its seller of the defect in the timberhead.
Dreyfus, Equitable, and Dibert all assert that they have been prejudiced by Azalea's failure to timely notify them of the suit against Archway and Consolidated involving the defective timberhead. Dreyfus cites Uniform Commercial Code § 400.2-607(3)(a) R.S.Mo. (1978), for the proposition that the buyer of a defective product must notify the seller within a reasonable time. Here, Azalea took one year to find the sale receipt, invoice and purchase order, while the Eagle Marine case was in progress.
Notification under the warranty provisions is not applicable, because the court bases its findings on strict liability. While § 400.2-607 applies to warranties, it is also clear that it may apply in other cases: Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over .... § 400.2-607(5)(a) R.S.Mo. (1978). As noted herein, this case is submitted on the theories of breach of warranty and strict liability in tort. As set out in the U.C.C. section noted above, the buyer must within a reasonable time after he discovers any breach notify the seller of the breach. This requirement is said to open the way for normal settlement through negotiation. Comment 4 to § 400.2-607. This requirement applies to this case, which has been decided on strict liability.
If Dreyfus' identity had been known, it should have been given the opportunity to settle the claims involving the timberhead, for 10% of the damages therein. The U.C.C. section above specifically mentions that a party who provides the goods should be given an opportunity to participate in settlements: such negotiations promote judicial economy, limitation of successive suits, each against the next supplier, and resolution of time and resource consuming litigation.
One entitled to indemnity is not bound to bring the action for indemnity before the underlying action is completed. Cf. Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe, 434 F.Supp. 920 (E.D.La. 1977). However, laches may bar the right to contribution and indemnity on a maritime claim before liability for the primary debt has been determined; under some circumstances, it may be unreasonable for one who claims contribution or indemnity to wait until liability is fixed before asserting his third party claim. Avondale, 434 F.Supp. at 934. For laches to apply, however, *118 there must be prejudice to the defendant. Espino v. Ocean Cargo Line, Ltd., 382 F.2d 67, 69 (9th Cir.1967); Avondale, supra. In Avondale, the prejudice was that the defendant did not have the opportunity to participate in discovery when the other parties did. Dreyfus was not allowed to participate in the discovery involving this occurrence when the other parties did. Dreyfus was not allowed to participate in the settlement. Also, the baseplate to the timberhead was not available for the subsequent parties' preparation of the lawsuit. It must be noted, however, that the baseplate's loss was due to Consolidated's action; the plate likewise was unavailable to Azalea. Dreyfus might have agreed to settle these suits for 10% of the total damages. However, this assumption is speculative.
Azalea excuses the delay in notifying Dreyfus by stating that no records implicating Dreyfus could be found until some months later. In Avondale, the delay was longer than the delay at bar. Further, Azalea gave notice to Dreyfus as soon as Azalea found out that Dreyfus was the supplier of the timberhead. There is no inequitable or bad conduct by Azalea; its delay in giving notice was not unreasonable.
The court has found that the timberhead was defective, such defect causing 50% of the fault. Dreyfus supplied the timberhead to Azalea. It is just and correct that Dreyfus indemnify Azalea for its damages therefrom.
Therefore, Dreyfus will be ordered to indemnify Azalea for the damages it has paid to Consolidated because of the timberhead.
7. Dreyfus has failed to show that the timberhead it purchased from Lone Star in 1973 was the same timberhead placed in Lone Star's barges by Equitable in 1955. Timberheads frequently break and have to be replaced. Timberheads were removed from Lone Star's barges between 1969 and 1972. They were kept by Lone Star for the specific purpose of replacement parts. It is entirely likely that the timberheads on Equitable's barges may have been broken before 1969 and been discarded. Even if not removed until 1969 to 1972, they could have been removed from the scrap pile prior to 1973: other timberheads than those originally on Equitable's barges may have been the ones sold to Dreyfus. J.T. McDonnell does not remember the year when the timberheads were removed; no records were kept; when shown pictures of timberheads at his deposition, he could make no positive identification.
There is no credible evidence that the timberheads which were placed on Equitable's barges in 1955 were the same sold from Lone Star's scrap pile in 1973 to Dreyfus.
Further, the evidence suggests that Equitable may have purchased the timberheads from Dibert. However, measurements of the Dibert timberheads and its identifying star are not similar to the timberheads which Dreyfus sold to Azalea. The evidence fails to show, moreover, that the timberheads which Equitable originally placed on its barges came from Dibert. Certainly, the timberhead which ended up on the Jackie 21 was not manufactured by Dibert.
Dreyfus' claim for indemnity from Equitable will be denied. Likewise, Equitable's claim for indemnity from Dibert will be denied.
8. Consolidated is entitled as a matter of law to be indemnified by Azalea because Azalea is strictly liable in tort for selling Consolidated a deck fitting with a latent defect which was unreasonably dangerous and a proximate cause of the breakaway.
9. Azalea is primarily liable with respect to Consolidated and therefore is required to indemnify Consolidated for any damages Consolidated has incurred in defense of claims arising out of the breakaway. Bagby v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 491 F.2d 192, 198 n. 9 (8th Cir.1974).
10. Attorneys' fees are recoverable in maritime cases where an innocent vessel owner is required to pay attorneys' fees in defending claims asserted against it by third parties. See Pasco Marketing, *119 Inc. v. Taylor Towing Service, Inc., 554 F.2d 808, 812 (8th Cir.1977). Inasmuch as Consolidated, as indemnitee, has given Azalea, as indemnitor, notice and the opportunity to assume its defense, attorneys' fees and costs are recoverable. Hales v. Green Colonial, Inc., 402 F.Supp. 738, 743 (W.D. Mo.1975).
11. Since Archway and Consolidated are bound by the findings of fact, determination of liability and damage apportionment in the Eagle Marine case, judgment shall be entered in favor of Vollmar Bros. Construction Co., Federal Barge Lines, Inc. and the United States of America and against Archway and Consolidated with damages apportioned one-half to each defendant.
12. Judgment shall be entered in favor of Consolidated and against Azalea on Consolidated's claim for indemnity in the amount of $105,782.27, which represents the total amount paid by Consolidated pursuant to the judgment entered in favor of plaintiffs in Eagle Marine, Cause No. 80-1119-A(B), with interest thereon at the rate of ten percent per annum from the date said payments were made; for $11,345.61, representing the damage to Consolidated's barges not recovered in the Eagle Marine case, with interest thereon at ten percent from 19 October 1981 as specified in the Judgment entered therein; for all damages and costs assessed against it and in favor of Vollmar Bros., Federal, and the United States of America in this action; and for the expenses incurred by Consolidated in defense of all the claims asserted against it, including attorneys' fees.
13. Judgment shall be entered in favor of Azalea and against Dreyfus on Azalea's claim for indemnity in the amount which represents the total amount paid by Azalea as damages to Consolidated; for the expenses incurred by Azalea in defense of the claims asserted against it in this action, including attorneys' fees. Attorneys' fees incurred by Azalea in the first Eagle Marine case are not recoverable because Dreyfus did not receive notice and an opportunity to defend the Eagle Marine suit.
14. Attorneys' fees which have been reasonably incurred in defense of a claim indemnified against may be recovered if a right to indemnity is implied by law, provided the indemnitor has notice of the lawsuit and an opportunity to defend. Hales v. Monroe, 544 F.2d 331, 332 (8th Cir.1976). However, fees incurred in asserting and developing defenses separate from the claims indemnified may not be recovered. Hales, 544 F.2d at 332. Nor may fees incurred in establishing the right to indemnity be recovered. Bagby, supra.
15. Costs shall be assessed one-half against Archway and one-half against Dreyfus in respect of the claims of Vollmar Bros., Federal, and the United States of America, and entirely against Dreyfus in respect of the third party claims of Consolidated and Azalea, in this suit.

JUDGMENT
Findings of Fact and Conclusions of Law dated this date hereby are incorporated in and made a part of this judgment.
IT HEREBY IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of plaintiff Vollmar Bros. Construction Co. and against defendants Archway Fleeting & Harbor Service, Inc. and Consolidated Grain and Barge Company for the sum of twenty-eight thousand, four hundred ninety dollars and forty-one cents ($28,490.41), plus pre-judgment interest at the rate of 10% per annum from 15 May 1984.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of plaintiff Federal Barge Lines, Inc. and against defendants Archway Fleeting & Harbor Service, Inc. and Consolidated Grain and Barge Company for the sum of sixty thousand, eight hundred and no/100 dollars ($60,800.00), plus pre-judgment interest at the rate of 10% per annum from 15 May 1984.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of plaintiff United States Army Corps of Engineers *120 and against defendants Archway Fleeting & Harbor Service, Inc. and Consolidated Grain and Barge Company for the sum of thirteen thousand, two hundred ninety-three dollars and seventy-nine cents ($13,293.79).
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that the above damages to be paid by Archway and Consolidated be and hereby are apportioned one-half to each defendant.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of Consolidated and against Azalea Fleet, Inc. on Consolidated's claim for indemnity in the amounts  described more fully herein  of one hundred five thousand, seven hundred eighty-two dollars and twenty-seven cents ($105,782.27); eleven thousand, three hundred forty-five dollars and sixty-one cents ($11,345.61), plus interest; and all damages and costs assessed against Consolidated in this action, including expenses incurred by Consolidated in defense of the claims asserted against it.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of Consolidated and against Azalea for reasonable and appropriate attorneys' fees in the amount of twenty-five thousand, six hundred eighty-two dollars and fifty-six cents ($25,682.56).
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of Azalea and against Dreyfus Supply and Machinery Corp. on Azalea's claim for indemnity in the amount which represents the total amount paid by Azalea as damages to Consolidated, including expenses incurred in defense of the claims asserted against it.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of Azalea and against Dreyfus for reasonable and appropriate attorneys' fees in the amount of four thousand, two hundred seventy-four dollars and fifty cents ($4,274.50). Because Dreyfus did not have an opportunity to defend the Eagle Marine case, Azalea cannot pass on to Dreyfus fourteen thousand, one hundred seventy-five dollars and sixty-seven cents ($14,175.67) of the $25,682.56 which Azalea owes to Consolidated as attorneys' fees.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of Equitable Shipyards, Inc. and against Dreyfus Supply and Machinery Corp. on Dreyfus' claim for indemnity.
FURTHER IT IS ORDERED, ADJUDGED, AND DECREED that judgment be and hereby is entered in favor of Dibert, Bancroft & Ross Co., Ltd. and against Equitable Shipyards, Inc. on Equitable's claim for indemnity.
This judgment shall bear interest, from the date set forth below, at 11.93% per annum.