**AZALEA FLEET, INC., Appellee,**

v.

**DREYFUS SUPPLY & MACHINERY CORP., Appellant,**

**CONSOLIDATED GRAIN AND BARGE CO., Appellee,**

v.

**AZALEA FLEET, INC., Appellant.**

Nos. 84–2402, 84–2459.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1985.

Decided Feb. 7, 1986.

Rehearing Denied March 6, 1986.

John S. Sandberg, St. Louis, Mo., for appellant.

Mark A. Ludwig and James W. Herron, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Dreyfus Supply and Machinery Corp. (Dreyfus) appeals from the district court's [1] judgment in favor of Azalea Fleet, Inc. (Azalea) on Azalea's indemnity claim. *See Vollmar Bros. Construction Co. v. Archway Fleeting & Harbor Service, Inc.*, 596 F.Supp. 112 (E.D.Mo.1984). The dispute arises from a barge breakaway on the Mississippi River on April 9, 1980, which caused property damage totalling $160,000. The district court found Consolidated Grain and Barge Company (Consolidated), the

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

owner of the barges, and Archway Fleeting and Harbor Service, Inc. (Archway), the owner of the harbor boats towing the barges, equally at fault in the breakaway. *See Eagle Marine Industries, Inc. v. Valley Line Co.*, 541 F.Supp. 297, 302 (E.D.Mo. 1982), *aff'd in part, rev'd in part, Consolidated Grain and Barge Co. v. Archway Fleeting & Harbor Service, Inc.*, 712 F.2d 1287 (8th Cir.1983). In this action, the district court awarded Consolidated judgment on its claim for indemnity from Azalea, which had sold it a timberhead alleged to be defective. Azalea's claim for indemnity from Dreyfus, the subject of this appeal, was based on its assertion that Dreyfus had supplied Azalea with the latently defective timberhead. For reversal Dreyfus argues that Azalea's indemnity claim is barred by the doctrine of laches; that the district court erred in admitting into evidence the prior trial testimony of a witness; and that Azalea failed to prove certain elements of its claim against Dreyfus. In the cross appeal, Azalea argues that if this court finds merit in Dreyfus' argument that Azalea did not prove certain elements in its case against Dreyfus, then the district court erred in granting Consolidated's indemnity claim against Azalea because Consolidated did not prove certain elements of its cause of action. We affirm the judgment of the district court.

## I. FACTS

The facts surrounding the barge breakaway are set forth in detail in *Eagle Marine*, 541 F.Supp. at 298–99, and will not be repeated here. The court in that case found Archway liable for half of the damage caused by the barge breakaway because of the negligent operation of its harbor boats. *Id.* at 301–02. The court also found that the port bow timberhead on the sternmost Consolidated barge was latently defective in that it was unable to withstand reasonable pressure. Because the barge was thereby rendered unseaworthy, Consolidated had "breached its continuing and nondelegable duty to deliver to Archway a seaworthy barge," *id.* at 301, and was equally at fault for the breakaway and resulting damage.

As a result of the breakaway, Consolidated, the United States, Vollmar Bros. Construction Co. (Vollmar Bros.), Eagle Marine Industries, Inc. (Eagle Marine), the Pillsbury Company, Monsanto Company, and various barge lines all suffered damage. Eagle Marine filed suit against Archway for its damages, and in July 1981 Archway brought a third party claim against Consolidated, alleging that the timberhead failure on its sternmost barge was the proximate cause of the breakaway. This suit is the subject of *Eagle Marine*. By letter of July 31, 1981, Consolidated demanded indemnity from Azalea, as installer of the timberhead, for any judgment rendered against Consolidated. On September 4, 1981, Monsanto then filed an intervening complaint in the *Eagle Marine* case, after which Consolidated again notified Azalea that it demanded indemnity from Azalea for any judgment rendered against it. Azalea responded to Consolidated's demand on October 14, 1981, refusing to indemnify Consolidated or undertake its defense.

Consolidated again contacted Azalea on April 2, 1982, detailing the terms of a settlement offer from Archway. Under this offer, Archway would pay eighty percent of the stipulated damages in *Eagle Marine* if Consolidated would agree to pay the remaining twenty percent. With this offer in mind, Consolidated informed Azalea that it would release Azalea from all of its claims if Azalea would agree to pay half of Consolidated's twenty percent of the damages. Because Azalea rejected Consolidated's offer, Consolidated refused Archway's offer.

On March 8, 1982, before judgment was rendered in *Eagle Marine*, Vollmar Bros. brought this suit for the damages it incurred in the barge collision. Consolidated wrote Azalea on April 12, 1982, to inform Azalea of this new suit, again demanding that Azalea indemnify Consolidated and undertake its defense. Azalea once again rejected Consolidated's demands by letter of April 16, 1982.

On May 27, 1982, Judge Regan entered his judgment in *Eagle Marine,* holding Consolidated and Archway equally liable for the breakaway damages. Consolidated wrote to Azalea on June 1, 1982 to inform Azalea of the judgment in *Eagle Marine,* to reiterate its demand for indemnity and its demand that Azalea undertake its defense in the suit filed by Vollmar Bros. Consolidated's requests were again refused by Azalea in a letter dated June 11, 1982.

Consolidated filed a third party complaint against Azalea in the instant case on June 3, 1982. Soon thereafter, on June 22, Azalea wrote Consolidated that it had discovered that Dreyfus had supplied it with the timberhead in question. On that same date Azalea notified Dreyfus of the decision in *Eagle Marine* that a defective timberhead had contributed to the barge collision, and that if the timberhead had in fact been installed by Azalea, that it had been supplied by Dreyfus. Azalea then filed a fourth party complaint in this action against Dreyfus on July 28, 1982, seeking indemnity for any judgment rendered against Azalea in the suit, along with the costs of defense. In its answer filed September 9, 1982, Dreyfus denied the allegations in Azalea's complaint, and stated further that Azalea's action was barred by the doctrine of laches and its failure to provide reasonable notice.

On May 8, 1984, the district court granted Azalea's motion for summary judgment on its indemnity claim. The court found that if Consolidated's records established that the timberhead was not replaced, repaired, or altered between the date that Azalea installed it and the date of the breakaway, then the timberhead was purchased by Azalea from Dreyfus. After a two day trial in May 1984, the district court rendered judgment on August 28, 1984,

finding Azalea liable on Consolidated's indemnity claim, and Dreyfus liable on Azalea's indemnity claim.

## II. LACHES

■■■ Dreyfus argues first that the district court's judgment must be reversed because the equitable doctrine of laches barred Azalea's claim for indemnity. In admiralty suits, the equitable doctrine of laches determines whether a party's delay in bringing its claim should bar the suit. *See Public Administrator of New York v. Angela Compania Naviera, S.A.,* 592 F.2d 58, 63 (2d Cir.), *cert. dismissed,* 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979); *Federal Commerce & Navigation Co. v. Calumet Harbor Terminals, Inc.,* 542 F.2d 437, 441 (7th Cir.1976). The application of the laches doctrine is within the sound discretion of the district court. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979) (quoting *Gardner v. Panama Railroad,* 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951)) (to prove laches "the plaintiff must be guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant"), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); *Harris v. Ford Motor Co.,* 487 F.Supp. 429, 432 (W.D.Mo. 1980). *Accord TWM Manufacturing Co. v. Dura Corp.,* 722 F.2d 1261, 1268 (6th Cir.1983); *Dickey v. Alcoa Steamship Co.,* 641 F.2d 81, 82 (2d Cir.1981).[2] In determining whether the laches doctrine applies to a particular case, the district court considers whether the plaintiff's delay in filing its suit was unreasonable, and the degree of prejudice suffered by the defendant due to the delay. *Cotton v. Mabry,* 674 F.2d 701, 704 (8th Cir.), *cert. denied,* 459 U.S. 1015, 103 S.Ct. 374, 74 L.Ed.2d 508 (1982); *Goodman,* 606 F.2d at 804; *Hurst v. United States Postal Service,* 586 F.2d 1197, 1199

2. Some courts have noted the fact-bound nature of the laches issue and have applied a "clearly erroneous" standard of review to the district court's determination. *See, e.g., Minnesota Mining and Manufacturing Co. v. Berwick Industries, Inc.,* 532 F.2d 330, 334 (3d Cir.1976) (on prejudice issue); *Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 803 (9th Cir.1970).

*See also Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 935–41 (7th Cir.1984) (Posner, J., concurring) (historical overview of equity concluding that clearly erroneous standard is proper in review of laches decisions). Our determination of this case would not change under a clearly erroneous standard of review.

(8th Cir.1978). When a plaintiff files a complaint within the applicable statutory period, the burden of proving the elements of the laches defense falls on the defendant. *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir.1980) (quoting *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 885 (5th Cir.1979)); *see also Hurst*, 586 F.2d at 1200.

■ Dreyfus contends that it established both that Azalea's delay in notifying Dreyfus was unreasonable and that it was greatly prejudiced by Azalea's delay. According to Dreyfus, Azalea failed to comply with the "timely notice" requirement of § 2–607(3)(a) of the Uniform Commercial Code [3] by waiting eleven months after Consolidated informed Azalea of its claim to notify Dreyfus. Under that section, Dreyfus asserts, an eleven month delay is unreasonable as a matter of law. Dreyfus states that Azalea presented no evidence to establish why it took eleven months to determine that Dreyfus supplied it with the timberhead, even though the answer lay in its own records. In support of its claim of prejudice Dreyfus points to its loss of the opportunity to participate in the settlement negotiations between Archway, Consolidated, and Azalea prior to the *Eagle Marine* trial; the unavailability of the timberhead baseplate, which was crucial to the identification of the timberhead manufacturer; its inability to take part in the pretrial discovery of *Eagle Marine;* the lack of similarity between Dreyfus' interests and the interests of the participants in *Eagle Marine;* and its inability to cross-examine Charles Lewis, the witness who testified as to causation.

In its opinion, the district court held that Azalea was not guilty of laches or other delay in failing to promptly notify Dreyfus of the timberhead defect. 596 F.Supp. at 117. The court found that Azalea gave notice to Dreyfus as soon as it knew that Dreyfus had supplied the timberhead, and that Azalea was not guilty of inequitable or bad conduct, or unreasonable delay. *Id.* at 118. Further, in answer to Dreyfus' claim of prejudice, the court noted that the timberhead baseplate was lost due to the action of Consolidated, and was likewise unavailable to Azalea. *Id.* Also, the court characterized the possibility that Dreyfus would have agreed to the settlement offer proposed by Archway as "speculative." *Id.*

Although we think the issue is a close one, we cannot say the district court abused its discretion in ruling that laches did not apply to Azalea's claim. The district court heard the case, observed the witnesses, and saw the evidence, and thus was in the best position to balance the equities inherent in the determination of whether laches applies. Because the case was decided on strict liability principles, the applicable statute of limitations was five years, running from the date the cause of action accrued—April 9, 1980, the date of the breakaway. *See* Mo.Rev.Stat. § 516.-120 (Vernon 1978). Therefore Azalea brought its claim within the statutory period and Dreyfus bears the burden of proving laches. *See Mecom*, 622 F.2d at 1215; *Hurst*, 586 F.2d at 1200. Dreyfus points to no proof in the record establishing that Azalea knew any earlier than June 1982 that Dreyfus had supplied the timberhead, nor can we say that an eleven month delay is unreasonable as a matter of law.[4] As

---

**3.** Section 2–607(3)(a) reads as follows: (3) Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy * * * * Mo.Ann.Stat. § 400.2–607(3)(a) (Vernon 1965).

**4.** Dreyfus argues that an eleven month delay in notification is unreasonable as a matter of law, and cites *Mariner Water Renaturalizer v. Aqua Purification Systems, Inc.*, 665 F.2d 1066, 1069

(D.C.Cir.1981); *Wagner Tractor, Inc. v. Shields*, 381 F.2d 441, 445 (9th Cir.1967); and *Barlow v. DeVilbiss Co.*, 214 F.Supp. 540, 544 (E.D.Wis. 1963). These cases all involve breach of warranty claims, however, in which timely notice is a condition precedent to recovery. The purpose of the notice requirement is "to enable the seller to minimize any damages or correct the defect." *Wagner Tractor*, 381 F.2d at 445. Because these cases do not involve laches, they do not apply to the case at bar.

for prejudice, we agree with the district court that whether the inability to participate in settlement negotiations with Consolidated and Archway actually prejudiced Dreyfus is speculative, and that any harm suffered by Dreyfus due to the loss of the timberhead baseplate was not caused by Azalea's delay. We cannot assume that Dreyfus' inability to participate in the discovery process in *Eagle Marine* greatly prejudiced Dreyfus or was caused by Azalea's delay in notifying Dreyfus. Consolidated did not notify Azalea of Archway's third party claim against it until Friday, July 31, 1981; depositions of the deckhands and pilots were taken on August 3, August 4, and August 5, 1981, the following Monday, Tuesday, and Wednesday. Dreyfus itself admits in its reply brief that Azalea was as prejudiced, in terms of lost opportunity to participate in discovery in *Eagle Marine*, by Consolidated's late notice, as Dreyfus was by Azalea's delay. Further, Dreyfus was a party to the instant suit for over one and a half years before trial, and could have initiated its own discovery. We conclude, therefore, that the district court did not abuse its discretion in deciding that laches did not apply to Azalea's claim.

## III. ADMISSION OF PRIOR TRIAL TESTIMONY OF CHARLES LEWIS

■ Dreyfus next asserts that the district court erred in allowing Azalea to read into evidence the *Eagle Marine* trial testimony of Charles Lewis, the pilot of one of the harbor boats. Dreyfus asserts that the admission of Lewis' testimony violated Fed. R.Evid. 804,[5] in that Lewis was not "unavailable" under the Rule, and that neither Dreyfus nor its predecessor in interest had an "opportunity and similar motive" to de-

velop Lewis' testimony at the *Eagle Marine* trial. According to Dreyfus, the admission of Lewis' testimony was prejudicial and reversible error because Lewis was the only witness who testified as to the causal relationship between the timberhead failure and the accident.

At the trial in this case on May 22, 1984, Azalea moved to have Lewis' trial testimony in *Eagle Marine* admitted under Rule 804, arguing that he was unavailable to testify in this matter. The process server, Gloria Brickey, testified that she tried to obtain service on Lewis on Friday, May 18, 1984, and Monday, May 21st, by going to Lewis' apartment complex. When she was unable to find Lewis, or even Lewis' name on any of the mailboxes, she went to the post office, where she found he had left no forwarding address. At Archway, where Lewis had been employed, Brickey was told Lewis had moved to Louisiana. Azalea argued that because it was unable to serve process on Lewis, he was unavailable under Rule 804. Further, Azalea contended that Consolidated had vigorously cross-examined Lewis at the *Eagle Marine* trial, to prove its position that Archway's negligence alone caused the barge collision, a position identical with Dreyfus' in the instant case. Dreyfus contended at trial, as it does here on appeal, that by waiting until three days before trial to try to serve process on Lewis, Azalea insufficiently established Lewis' unavailability. Also, Dreyfus asserted that Consolidated did not have the same interest in cross-examining Lewis because Consolidated knew that if it lost the *Eagle Marine* trial, it could pass liability on to Azalea and, ultimately, Dreyfus.

We conclude that the district court did not err in admitting Lewis' testimony from

---

5. Fed.R.Evid. 804 reads in relevant part:

  (b) **Hearsay exceptions.** The following [is] not excluded by the hearsay rule if the declarant is unavailable as a witness:

    (1) **Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered,

or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Section (a)(5) of the Rule defines unavailability as including situations in which the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance * * * by process or other reasonable means."

the *Eagle Marine* trial. A finding that a witness is "unavailable" for the purposes of Rule 804 is within the district court's discretion. *Republic Security Corp. v. Puerto Rico Aqueduct & Sewer Authority*, 674 F.2d 952, 957 (1st Cir.1982); *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981); *Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385, 1390 (5th Cir.) (quoting *Castilleja v. Southern Pacific Co.*, 445 F.2d 183, 186 (5th Cir.1971) ), *cert. denied*, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980). Dreyfus, as the party arguing that the testimony should not have been admitted, must show that the district court erred in accepting Azalea's explanation. *Bailey*, 613 F.2d at 1390. Azalea made a good faith attempt to serve Lewis at both his residence and workplace of record. Despite Dreyfus' contention that Azalea waited too late to attempt service on Lewis, Dreyfus makes no showing that an earlier attempt on Azalea's part would have secured Lewis' presence at trial. Lewis was not subject to subpoena in Louisiana. *See* Fed.R.Civ.P. 45(e). *Perricone v. Kansas City Southern Railway*, 630 F.2d 317 (5th Cir.1980), cited by Dreyfus in support of his contention that Azalea did not act with sufficient diligence to locate Lewis, is inapposite. In *Perricone* the alleged unavailable witness worked one mile from the courthouse; his whereabouts were discovered after only a two-hour search. His testimony in the previous trial showed that he lived in China, Texas; although he had moved to Beaumont, Texas, upon calling his China number a recording would give the new number. No witness subpoena had ever been issued for him. These facts differ greatly from the case at hand, in which Azalea attempted to serve Lewis, but he had moved to Louisiana with no forwarding address.

Likewise, we agree with Azalea that Consolidated was a "predecessor in interest" of Dreyfus, with an "opportunity and similar motive" to develop Lewis' testimony at the *Eagle Marine* trial. Both Consolidated in *Eagle Marine* and Dreyfus in this case had an interest in establishing that Archway's negligence was the sole cause of the breakaway. Dreyfus' contention that Consolidated's knowledge that it could pass any liability on to Azalea and Dreyfus made it less interested in thoroughly cross-examining Lewis is without merit. Consolidated conducted a vigorous trial of the *Eagle Marine* case, and appealed to this court the district judge's finding that it and Archway were equally at fault for the breakaway. In sum, the district court properly admitted Lewis' *Eagle Marine* testimony pursuant to Fed.R.Evid. 804(b)(1).

## IV. SUFFICIENCY OF THE EVIDENCE

■ Dreyfus' final contention on appeal is that the district court erred in granting Azalea's claim for indemnity because Azalea did not prove certain elements of its cause of action. Specifically, Dreyfus argues that Azalea did not prove that the alleged defective timberhead was the same one Azalea had purchased from Dreyfus; that the timberhead was in substantially the same condition at the time of its alleged failure as when purchased from Dreyfus; or that the timberhead contained an unreasonably dangerous defect. Dreyfus asserts that section 402A of the Restatement (Second) of Torts [6] requires that a plaintiff proceeding on a strict products liability theory establish each of these elements.

The district court found that the timberhead defect constituted an unreasonably

---

6. Restatement (Second) of Torts § 402A (1965) reads in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

dangerous condition, rendering it unfit for its ordinary use; that the timberhead in question was the same one sold by Dreyfus to Azalea; and that the timberhead was in substantially the same condition at the time cf the incident as when purchased by Dreyfus from Lone Star Industries, Inc. *Vollmar Bros.*, 596 F.Supp. at 115. This court may reverse a district court's finding of fact only if that finding is clearly erroneous. *Anderson v. Bessemer City*, — U.S. —, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). *See also SCNO Barge Lines, Inc. v. Sun Transportation Co.*, 775 F.2d 221, 224 (8th Cir.1985) (findings of a district court sitting without a jury in an admiralty case are reviewed under the "clearly erroneous" standard). "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson*, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

Upon review of the record, we are satisfied that the district court's findings in question concerning the timberhead are not clearly erroneous. Azalea offered into evidence a survey showing that it had placed a timberhead purchased from Dreyfus on the port bow of the barge on April 16, 1974. The repair records for the barge detail many inspections and repairs to the barge but include no notations about the timberhead in issue. Nothing in the evidence indicates that the timberhead was replaced before the collision. The trial testimony established that the timberhead was defective in that a hole had been filled, immediately following manufacture, by a plug weld that did not penetrate far enough. The hole in combination with the lack of penetration of the plug weld caused a stress concentration point, which effectively multiplied the applied load in the area. From this evidence the court could conclude that the timberhead sold by Dreyfus remained on the barge from 1974 until the collision, without alteration or replacement,

and that its defect rendered it unreasonably dangerous. In sum, we cannot conclude that the district court's findings are clearly erroneous. Because we affirm the district court's determination that Azalea proved its case against Dreyfus, we need not reach Azalea's cross appeal.

## V. CONCLUSION

The district court's judgment granting Azalea's claim for indemnity from Dreyfus is affirmed, costs assessed against appellant Dreyfus.