[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 4 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11456

_____

D. C. Docket No. 97-07449-CV-PAS

VENUS LINES AGENCY, INC.,

Plaintiff-Appellant-Cross-Appellee,

versus

CVG INTERNATIONAL AMERICA, INC.,

Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(December 4, 2000)**

Before EDMONDSON, WILSON and MAGILL*, Circuit Judges.

_____

*Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

WILSON, Circuit Judge:

This appeal raises the issue of whether there was sufficient mutual assent for the parties to form a valid new contract or to modify an existing one. We find that there was not. Also at issue in this appeal are the application of the doctrine of laches to demurrage claims, and the proper calculation of damages on demurrage claims.

Plaintiff Venus Lines Agency, Inc. (Venus) appeals the district court's ruling in favor of Defendant CVG International America, Inc. (CVGIA) on Venus' claim that CVGIA breached its contract with Venus, the ruling that Venus' 1995 and 1996 demurrage claims were barred by the doctrine of laches, and the district court's calculation of damages with respect to its 1997 demurrage claim. CVGIA cross-appeals the district court's finding that CVGIA was liable for Venus' 1997 demurrage claim.

We have reviewed the record and the arguments in the briefs. We find no reversible error in the district court's rulings on Venus' breach of contract claim or its finding that the doctrine of laches barred Venus' 1995 and 1996 demurrage and shipping claims, and affirm the district court's findings of facts and law on those claims. We find that the district court erred in calculating CVGIA's liability with respect to Venus' 1997 demurrage claim, and remand this case for recalculation of damages.

## I. BACKGROUND

CVGIA is a Florida corporation that arranges and secures the shipment of goods for a large Venezuelan conglomerate. Prior to its relationship with Venus, another Venezuelan company (Compañia Anonima Venezolana de Navegacion (CAVN)) handled CVGIA's freight pursuant to annual contracts that were renewed each year. In March 1994, CVGIA began doing business with Venus after CAVN went bankrupt by arranging one round-trip voyage carrying the products of the Venezuelan conglomerate northward to Mobile and carrying the CVGIA procured shipments southward to Venezuela. Later, CVGIA solicited bids for the shipment of goods southward from Miami, Port Everglades, and Mobile to Venezuela. CVGIA requested bids to carry goods for one year at a fixed tariff rate, and the bid request contained terms similar to CAVN's last contract with CVGIA. Venus filed its tariff rates and terms for the service with the Federal Maritime commission.[1] Venus submitted its bid, and CVGIA accepted it in April 1994.

---

[1]Rule 7-02 of the tariff filed with the Federal Maritime Commission allowed the carrier (Venus) to recover all costs of collection for freight charges past due, plus twelve percent annual interest compounded daily. This interest rate in the tariff is relevant to our discussion of the district court's calculation of damages, *infra*.

Over the next few months, Michael Kobiakov, Venus' President, met with representatives from CVGIA on several occasions to discuss the possibility of a long-term agreement. Venus contends the parties agreed to a four-year service contract in October 1994 at a meeting between Kobiakov and CVGIA's Executive Vice President Ramon Iglesias, and that the terms of this contract were recorded in Kobiakov's notes, which he took on the face of an earlier contract between CVGIA and Seafreight Line Ltd. CVGIA, however asserts the parties never finalized a long-term contract. Over the next two years, Venus and CVGIA discussed possible written agreements, but were never able to agree on written terms. CVGIA rejected several drafts that Venus proposed. In September, 1997, CVGIA informed Venus that its services were no longer needed for the Miami to Venezuela run.

Venus sued CVGIA in the Southern District of Florida, alleging that CVGIA breached its contract with Venus, and seeking liquidated damages provided for in the 1994 oral "agreement." Alternatively, Venus sought damages for misrepresentation and promissory estoppel, alleging CVGIA's actions led Venus to believe it was engaged in a contractual relationship, and to rely on that belief to its

detriment. Venus also alleged CVGIA failed to pay demurrage[2] and freight charges specified in the bills of lading Venus issued CVG with each voyage.

After a five day bench trial, the district court found that no long term contract existed between Venus and CVGIA, as there had never been any agreement on the fundamental issues of duration and price. The district court rejected Venus' promissory estoppel and misrepresentation claims, finding that CVGIA made no "clear and unambiguous promise" upon which Venus relied, that any additional expenditures Venus made to service CVGIA were necessary expenditures, and that there was insufficient evidence to support a misrepresentation claim. The court found that the doctrine of laches barred Venus' demurrage claims for 1995 and 1996, because Venus had an obligation to demand payment from CVGIA rather than waiting until this lawsuit to file its demurrage claims for those years. The court found Venus "made a timely pre-suit demand for the 1997 demurrage and [was] entitled to recover from CVGIA under the terms of the bills of lading." The court ordered that Venus was entitled to collect $78,629.49 "plus ten percent . . . interest per annum running from the date the

---

[2]Demurrages are penalties for delays in the loading and unloading of goods.

freight or demurrage was due, and for the attorneys' fees relating to the prosecution of freight and demurrage claims."

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

An appeal from a final judgment entered by a United States District Court provides us with jurisdiction under 28 U.S.C. § 1291.

We review a district court's factual findings when sitting without a jury in admiralty under the clearly erroneous standard. *See Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1138 (11th Cir. 1994). We review the district court's conclusions of law *de novo*. *See id.*

### B. Contract Claim

Venus contends the district court erred when it framed the central issue of whether a long-term contract existed between CVGIA and Venus as one of formation and not modification. Venus also argues the district court misstated the rule governing parties contemplating a written agreement, because the intention to sign a written agreement does not prevent the parties from agreeing to an enforceable oral contract. Venus asserts it had an enforceable four-year oral contract to ship goods for CVGIA that arose from a modification of the contract

6

formed when CVGIA accepted Venus' bid, and that the modified terms were the contract's extended duration and modified scope of service.

"It is not necessary . . .to reduce an agreement to writing to bind the parties, as long as the parties intend to be bound at the time of the oral agreement." *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1341 (S.D. Fla. 1998). In April 1994, CVGIA accepted Venus' bid to perform the services contract. Acceptance of a bid to perform services can create an enforceable contract in the absence of a written agreement. *See Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998). CVGIA does not dispute that the parties entered into a contract in April 1994, but it argues that the relationship between CVGIA and Venus was a series of discrete contracts to ship the goods at the tariff rate, and that these agreements were never modified in favor of a long-term agreement. We agree with the district court that the parties did not form a valid long-term agreement.

In order to form an enforceable oral contract, "there must be a meeting of the minds on all essential terms and obligations of the contract." *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990). Venus has failed to establish there was a meeting of the minds between itself and CVGIA on all of the essential terms of the alleged four-year contract. Venus maintains that it always charged, and CVGIA

7

always paid, the tariff rate. However, Kobiakov's notes allegedly reflected the terms of the oral agreement reached in October 1994. Those notes, taken on the face of a prior contract between CVGIA and another company, reflect rates that were not implemented. Furthermore, the tariff rates were never revised to implement the negotiated rate terms reflected in Kobiakov's notes. The district court found, and we agree, that the rate term was an essential term upon which the parties had to agree. The conduct of the parties after they reached the alleged oral agreement suggests there was no meeting of the minds on the rate term.

Even if Venus were correct that the central issue in this case is not whether the parties formed a new contract, but whether they modified an existing one, the conduct of the parties after they reached the purported agreement demonstrates there was no valid modification of the contract formed when CVGIA accepted Venus' bid. A meeting of the minds on modified terms is necessary to validly modify a contract. *See United Contractors, Inc. v. United Constr. Corp.*, 187 So. 2d 695, 702 (Fla. Dist. Ct. App. 1966) (holding "one party to a contract cannot alter its terms without the assent of the other parties; the minds of the parties must meet as to the proposed modification.") (internal quotation marks and citation omitted). The parties in this case continued to negotiate, trying to work out a long-term deal. CVGIA continued to compensate Venus at the tariff rate, and Venus

8

continued to accept payment at that rate, not at the modified rates that would be required by the modified scope of service. Venus also alleged that the modified contract contained a liquidated damages clause, but Venus did not seek to enforce that clause until more than a year after it originally filed this action. These facts indicate that there was no mutual assent on the new terms of the contract.

Venus is correct that in certain contractual situations, the parties' intent to eventually reduce the agreement to writing does not prevent the contractual obligations from arising immediately. *See Lifecare Int'l, Inc. v. CD Medical, Inc.*, 68 F.3d 429, 436 (11th Cir. 1995), *modified and supplemented on other grounds*, 85 F.3d 519 (11th Cir. 1996). In such situations, however, the parties must intend that their oral or written negotiations be immediately binding. *See id.* CVGIA's refusal to sign Venus' written proposals was continuous for nearly two years. This consistent refusal to sign Venus' proposed drafts is strong evidence that CVGIA did not intend the earlier negotiations to be immediately binding. Therefore, we find that the district court correctly held that CVGIA intended that any contract would be reduced to writing and signed.

C. Doctrine of Laches

The equitable doctrine of laches will bar a claim when three elements are present: "(1) a delay in asserting a right or a claim; (2) that the delay was not

excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). Venus concedes that in admiralty claims, the equitable doctrine of laches generally controls whether a party's delay in bringing a claim should bar the suit. *See, e.g.*, *Puerto Rican-American Ins. Co. v. Benjamin Shipping Co.*, 829 F.2d 281, 283 (1st Cir. 1987); *Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp.*, 782 F.2d 1455, 1458 (8th Cir. 1986); *Firearms Import & Export Corp. v. Lykes Bros. Steamship Co.*, 458 F. Supp. 88, 90 (S.D. Fla. 1978) (holding doctrine of laches applies in absence of statute of limitations). Venus argues, however, that courts use statutes of limitations periods in applying laches. The limitations period in Florida's Statute of Limitations for oral contracts is four years. *See* FLA. STAT. ch. 95.11(k). Venus' delay in bringing the demurrage claims was less than three years for the 1995 claims. Venus argues, therefore, that it should have been presumed to have timely brought the suit, and that the first element of the laches doctrine–a delay in asserting the right or claim–cannot be met.

In admiralty claims, we look to the analogous statute of limitations only as a benchmark in determining whether to apply the doctrine of laches. The former Fifth Circuit held that: "the analogy rule serves primarily to determine where rests

10

the burden of proof. '[W]hen a plaintiff files a claim in admiralty within the analogous statutory period, defendant must show inexcusable delay and resulting prejudice in order to establish a laches defense.'" *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980) (quoting *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 885 (5th Cir. 1979));[3] *see also TAG/ICIB Servs., Inc. v. Pan American Grain Co.*, 215 F.3d 172, 175 (1st Cir. 2000); *Puerto Rican-American Ins. Co.*, 829 F.2d at 283; *Azalea Fleet, Inc.*, 782 F.2d at 1458-59. Assuming, then, that the analogous limitations period is four years, we must determine whether CVGIA demonstrated Venus' delay in demanding payment for outstanding demurrage was inexcusable and whether the delay was prejudicial.

During 1995 and 1996, Venus accepted payment from CVGIA's consignees (the Venezuelan conglomerate that owned CVGIA), and failed to demand payment from CVGIA for any outstanding demurrage. The district court found, and we agree, that Venus had a responsibility to demand payment from CVGIA on demurrage rather than to wait until filing this suit. As Venus admitted at oral argument, the invoices for 1995 and 1996 demurrage charges were not sent to CVGIA, and the invoices to the consignees were not presented to CVGIA until

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

Venus filed this lawsuit in 1998. We find that this delay was inexcusable. The delay was prejudicial to CVGIA, because had Venus made a timely pre-suit demand for payment, CVGIA could have contested the claim, or sought to obtain payment from the consignees. Because we find that Venus' delay in demanding payment for the 1995 and 1996 demurrage charges was inexcusable and prejudicial, we hold that the district court correctly held that the doctrine of laches barred those demurrage claims.

Venus, however, did make a timely pre-suit demand for payment of the 1997 demurrage charges. Because there was no inexcusable delay in making that demand, the district court correctly held that the doctrine of laches does not bar that claim.

D. Calculation of Damages

The tariff Venus submitted with the Federal Maritime Commission clearly indicates that the interest rate on costs of collection of freight and demurrage was twelve percent. In calculating damages, the district court used an interest rate of ten percent. What interest rate to apply in calculating damages is a factual determination subject to a clear error standard of review. *See Marine Transp. Servs. Sea-Barge Group, Inc.*, 16 F.3d at 1138. Because the bills of lading in this case incorporated all the terms and conditions of the tariff, we hold that the district

12

court clearly erred in applying a ten percent interest rate rather than the twelve percent rate in the tariff. We reverse the district court's calculation of damages and remand for recalculation.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's decision that the parties did not make a long-term oral contract in October 1994, and we find that there was no valid modification of the existing contract between CVGIA and Venus. We also affirm the district court's decision that the doctrine of laches barred Venus' 1995 and 1996 demurrage claims, but did not bar its 1997 demurrage claim. We reverse the district court's calculation of damages, and remand this case to the district court for recalculation of damages.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.