**SL SERVICE, INC., d/b/a CSX Lines, Plaintiff,**

v.

**INTERNATIONAL FOOD PACKERS, INC., et al., Defendants.**

**Civ. No. 00–1568 JAF.**

United States District Court, D. Puerto Rico.

Aug. 20, 2002.

Jorge L. Arroyo–Alejandro, San Juan, PR, William D. De Voe, Holmes Weddle & Barcott, Seattle, WA, for plaintiff.

Eldia M. Diaz–Olmo, San Juan, PR, Julie Feigeles, Miami, FL, Leslie Alvarado–Lliteras, Nevares, Sanchez–Alvarez &

Mendez, Gerardo Pavia, Pavia & Diaz Garcia, San Juan, PR, Jose E. Garcia–Soto, Santurce, PR, for defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Sea Land Service, Inc. ("Sea Land"), doing business as CSX Lines, brings this maritime action against Defendants, International Food Packers, Inc. ("IFP"); Marvel Specialties ("Marvel"); Packers Provision, Inc. ("Packers"); Star Meat, Inc. ("Star Meat"); Encinal, Inc. ("Encinal"), doing business as Star Meat; Montecillos International, Inc. ("Montecillos"); Oriente Commercial, Inc. ("Oriente"); and Long Beach Corp., Inc. ("Long Beach"). *Docket Document No. 31.* Plaintiff seeks unpaid demurrage.[1] *Id.*

Defendant IFP moves for summary judgment. *Docket Document No. 69.* Plaintiff opposes the motion. *Docket Document No. 89.*

### I.

### *Factual and Procedural Background*

Unless otherwise indicated, we derive the following factual summary from the statement of uncontested facts submitted by Defendant IFP in its motion for summary judgment and by Plaintiff in its opposition. *Docket Document Nos. 69, 89.*

Plaintiff Sea Land is a common carrier engaged in the transportation of cargo between the United States, Puerto Rico, and foreign countries. *Docket Document No. 31.*

Defendant IFP sells meat and meat products produced in Uruguay, Brazil, and Argentina.

During the years 1996 to 1999, Defendant IFP hired Plaintiff Sea Land as a carrier to ship meat and meat products from Uruguay, Brazil, and Argentina to Puerto Rico. Plaintiff Sea Land issued bills of lading for each shipment, naming IFP as the consignee and Sea Land as the carrier. The bills of lading provided that the goods would be delivered upon payment of all charges due.

Defendant IFP contends that on most occasions when it hired Plaintiff Sea Land to ship its products to Puerto Rico, Defendant IFP would endorse and deliver the original bill of lading to the third party that was purchasing the meat from Defendant IFP. The purchasers would produce the original bill of lading and retrieve the shipment from Plaintiff Sea Land when the ship arrived in Puerto Rico.

Defendant IFP maintains that it did not receive any invoices or other notice that it owed overdue demurrage until May 1999. On May 4, 1999, Plaintiff Sea Land demanded $110,199 from Defendant IFP for past due demurrage incurred between November 1997 and April 1999. Until May 1999, Plaintiff Sea Land had been sending the invoices requesting demurrage to the wrong address.

On August 9, 1999, Plaintiff Sea Land sent another collection letter to Defendant IFP, seeking $113,459 for unpaid demurrage from Defendant IFP, and $20,397

---

1. Demurrage is "the sum which is fixed by the contract of carriage, or which is allowed, as remuneration to the owner of a ship for the detention of his vessel beyond the number of days allowed by the charter-party for loading and unloading or for sailing." BLACK'S LAW DICTIONARY 432 (6th ed.1990). In the context of containerized transportation, the use of containers by the consignee beyond the free time authorized by tariff generates a demurrage charge. *See generally Gulf Puerto Rico Lines v. Associated Food,* 366 F.Supp. 631, 635 (D.P.R.1973).

from International Food Distributors.[2] Plaintiff offered a thirty-percent discount upon prompt payment.

In June 1998, Plaintiff Sea Land filed a lawsuit in the United States District Court for the District of Puerto Rico against International Food Distributors seeking $20,397 in unpaid demurrage. The summons and complaint was never served on Defendant IFP, and the lawsuit was dismissed on November 14, 1999.

Plaintiff filed the present action on May 9, 2000, *Docket Document No. 1,* and submitted an amended complaint on September 29, 2000. *Docket Document No. 31.* Plaintiff asserts that Defendant IFP is the consignee of the bills of lading for the shipments to Puerto Rico and owes Plaintiff past due demurrage in the amount of $138,837, as well as a thirty-five percent collection fee, totaling $187,430. *Id.* Alternatively, Plaintiff seeks the demurrage from the purchasers of Defendant IFP's meat products: Defendants Marvel, Packers, Star Meat, Encinal, Montecillos, Oriente, and Long Beach. *Id.*

On March 5, 2001, Defendant IFP filed a motion for summary judgment on the ground that Plaintiff's claims are barred by the doctrine of laches. Defendant is also seeking summary judgment on the ground that Plaintiff failed to mitigate its damages. *Docket Document No. 69.* Plaintiff opposed the motion on August 14, 2001, *Docket Document No. 89,* and tendered a supplemental opposition on April 29, 2002.

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reason-

---

**2.** It is unclear how International Food Distributors is involved with this suit, or even whether such a company actually exists.

ably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

## III.

### Analysis

### A. *Laches*

■ Defendant IFP moves for summary judgment on the ground that the equitable doctrine of laches bars Plaintiff Sea Land's demand for overdue freight charges. *Docket Document No. 69.* Plaintiff acknowledges that the doctrine of laches applies to its claims, but disputes the contention that laches bars the present suit.

Plaintiff asserts its claims pursuant to this court's maritime and admiralty jurisdiction. *See* 28 U.S.C. § 1333 (1994 & Supp. I 2001). "In an admiralty case, maritime law and the equitable doctrine of laches govern the time to sue." *TAG/ICIB Servs., Inc. v. Pan Am. Grain Co.*, 215 F.3d 172, 175 (1st Cir.2000) (internal citations omitted). In applying the doctrine of laches, we examine whether Plaintiff's delay in bringing the present suit was unreasonable and whether Defendant was prejudiced by the delay. *See id.*

### 1. *Analogous Statute of Limitations*

■ To determine whether there has been unreasonable delay in bringing suit, we look to the analogous statute of limitations. *See id.* The analogous statute of limitations is not dispositive; rather, it is used to determine burdens of proof and presumptions of timeliness and untimeliness. *Id.* If Plaintiff filed its complaint within the analogous statute of limitations period, Defendant IFP has the burden of proving unreasonable delay and prejudice. *Id.* at 176. If Plaintiff filed the complaint after the statute of limitations expired, a presumption of laches is created, and Plaintiff has the burden of demonstrating that there was no unreasonable delay in bringing the lawsuit and that Defendant IFP was not prejudiced. *Id.*

■ The most analogous statute of limitations period may be found in state or federal law. *Id.* However, courts generally favor applying a federal statute of limitations for policy reasons. *See, e.g., id.* (explaining that applying a local statute of limitations undermines uniformity in admiralty law and enervates the policy against discriminatory rates, especially in a forum with a short limitations period); *Barrois v.*

*Nelda Faye, Inc.,* 597 F.2d 881, 884 (5th Cir.1979).

■ Defendant IFP argues that this court should apply the six month statute of limitations found in Article 947 of the Puerto Rico Commerce Code, 10 L.P.R.A. § 1909 (1997), when conducting the laches analysis. *See Docket Document No. 69.* Defendant IFP claims that the Puerto Rico statute of limitations should be applied because there is no applicable federal rule. *Id.* Specifically, Defendant IFP contends that the statute of limitations found in the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") should not be applied because the ICCTA only covers shipments from foreign ports to the United States that also involve at least one domestic transhipment. *See* 49 U.S.C. § 13521(a) (1997 & Supp. I 2002).[3] Here, all of the shipments originated outside the United States, and involved only one United States port. *Docket Document No. 69.*

Plaintiff asserts that the eighteen-month statute of limitations found in the ICCTA is the analogous statute of limitations. *Docket Document No. 89.* Alternatively, Plaintiff contends that the three-year statute of limitations found in the Shipping Act of 1984 ("Shipping Act"), 46 U.S.C.App. § 1710(g) (1975 & Supp. I 2001),[4] should govern our laches analysis. *See Sea Land Serv. v. Trans Senko Corp.,* 735 F.Supp.

900, 901 (N.D.Ill.1990) (three-year statute of limitations applies to actions brought in federal court as well as to actions brought before the Federal Maritime Commission).

Plaintiff brings the present action against Defendant IFP pursuant to the provisions of the Shipping Act, 46 U.S.C.App. §§ 1701–1720 (1975 & Supp. I 2001). *Docket Document No. 31.* One purpose of the Shipping Act is "to establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs." 46 U.S.C.App. § 1701. Since the Shipping Act appears to regulate the tariffs giving rise to the demurrage, we find that the Shipping Act provides the most analogous statute of limitations. *Cf. TAG/ICIB Servs.,* 215 F.3d at 176 ("[W]e are satisfied that the most analogous statutes are the federal statutes regulating the very tariffs under which the alleged demurrages arose.").

### 2. *Demurrage Claims Accruing Before May 7, 1997*

The three-year statute of limitations found in the Shipping Act applies to Plaintiff's demurrage claims. Any demurrage claims that accrued three years before

---

3. Section 13521(a) provides, in part:

The Secretary and the [Surface Transportation] Board have jurisdiction over transportation insofar as water carriers are concerned—
. . . .
(3) by water carrier or by water carrier and motor carrier between a place in the United States and a place outside the United States, to the extent that—
. . . .
(C) when the transportation is by water carrier from a place outside the United States, the transportation is provided by water carrier from a place in the United

States to another place in the United States after transshipment to a place in the United States from a place outside the United States.
49 U.S.C. § 13521(a).

4. Section 1710(g) stipulates that, "[f]or any complaint filed within 3 years after the cause of action accrued, the Commission shall, upon petition of the complainant and after notice and hearing, direct payment of reparations to the complainant for actual injury . . . caused by the violation of this chapter plus reasonable attorney's fees." 46 U.S.C.App. § 1710(g).

Plaintiff filed the present action on May 9, 2000 is outside the period prescribed by the analogous statute of limitations. Therefore, a presumption of laches is created as to demurrage claims that accrued before May 9, 1997.

■ "Where, as here, the statute has run prior to instituting suit, the plaintiff must prove either absence of prejudice or excuse for delay to repel a claim of laches." *Mecom v. Levingston Shipbuilding Co.,* 622 F.2d 1209, 1215 (5th Cir.1980).

■ Plaintiff has not proffered any evidence to suggest an absence of prejudice or to indicate that its delay was excusable. Therefore, we find that Plaintiff's claims for unpaid demurrage that accrued before May 9, 1997 are barred by the doctrine of laches.

### 3. *Demurrage Claims Accruing After May 9, 1997*

Plaintiff's claims for demurrage that accrued after May 9, 1997 fall within the analogous three-year statute of limitations. Therefore, Defendant IFP has the burden of proving unreasonable delay and prejudice for these charges. *TAG/ICIB Servs.,* 215 F.3d at 176.

■ "There is a strong presumption that a plaintiff's delay in bring[ing] suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed." *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.,* 270 F.3d 298, 321 (6th Cir.2001). Furthermore, Plaintiff made a pre-suit demand for payment on May 4, 1999, and another demand on August 9, 1999. Therefore, Defendant IFP had notice of the unpaid freight charges over a year before Plaintiff filed the present action. *See Venus Lines Agency v. CVG Int'l Am., Inc.,* 234 F.3d 1225, 1231 (11th Cir.2000) (finding no inexcusable de-lay where plaintiff made a timely, pre-suit demand for unpaid demurrage).

■ Nonetheless, Defendant IFP asserts that Plaintiff should have sent it invoices for the demurrage charges at the time that the charges accrued. Defendant IFP proffers evidence that Plaintiff initially sent the invoices to the wrong address, even though it had the correct address for Defendant IFP and continued to do business with Defendant IFP. Defendant IFP also attests that during Plaintiff's delay in seeking collection of the demurrage, some of IFP's purchasers went out of business or experienced financial difficulties. Defendant IFP does not, however, identify which parties are currently unable to pay monies owed or quantify how much of the alleged demurrage, if any, has become unrecoverable. Without more concrete evidence, we are unwilling to find as a matter of law that Plaintiff's delay in filing this lawsuit caused inexcusable prejudice to Defendant IFP.

Defendant IFP has not met its burden of showing inexcusable delay and prejudice as to the demurrage charges that accrued after May 9, 1997, and we cannot find that the doctrine of laches bars Plaintiff's suit for these unpaid demurrage charges.

### B. *Failure to Mitigate Damages*

Defendant IFP argues that Plaintiff should have collected the demurrage charges from the parties to whom the goods were delivered at the time of delivery, rather than sending invoices a later date to Defendant IFP. Furthermore, Defendant asserts that Plaintiff sent the invoices to the wrong address for Defendant IFP, even though Plaintiff was doing business with Defendant IFP at the time and had its correct address. Defendant IFP maintains that Plaintiff's actions demonstrate its failure to mitigate damages, and

that Plaintiff therefore is not entitled to recover any damages it suffered.

Plaintiff maintains that there exist genuine issues of material fact as to whether it acted reasonably in limiting its damages. Plaintiff asserts that there are a number of possible reasons why, in a case such as this one, it would not have collected demurrage at the time the charges were incurred. For example, Plaintiff may have deferred collection if Defendant IFP had credit with Plaintiff Sea Land. Plaintiff also hypothesizes that it may have been unable to calculate the exact amount of demurrage owed at the time of delivery.

■ "The general principle is well settled that a party cannot recover for harms that its own reasonable precautions would have avoided." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 72 F.3d 190, 204–5 (1st Cir.1995); *see also Cross Equip., Ltd. v. Hyundai Merch. Marine (Am.) Inc.*, No. Civ. A. 97–25969, 1998 WL 104682, at *2 (E.D.La. Mar. 5, 1998) (explaining that admiralty law requires a party to mitigate damages).

■ However, in the present case, the reasonableness of the measures taken by Plaintiff to mitigate its damages is material and in dispute. Therefore, we find that it is premature to grant summary judgment as to this issue at this time.

## IV.

### Conclusion

In accordance with the foregoing, we find that the doctrine of laches bars Plaintiff's claims that fall outside of the analogous statute of limitations. Therefore, we **GRANT** Defendant IFP's motion for summary judgment as to Plaintiff's claims for demurrage that accrued before May 9, 1997. We **DENY** Defendant IFP's motion for summary judgment with regard to the demurrage claims that accrued after May 9, 1997. *Docket Document No. 69.*

**IT IS SO ORDERED.**