[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13280
_____

D.C. Docket No. 9:11-cv-80722-KAM


D & M CARRIERS LLC,
a foreign corporation,
d.b.a. Freymiller, Inc.,

                                   Plaintiff - Counter Defendant - Appellant,


versus


M/V Thor Spirit
along with her engines, boilers, machinery, masts,
rigging, tackle, equipment and supplies, tools, pumps,
gear, furniture, appliances, and fishing gear and other
appurtenances and apparel, having Serial No. VSC57045D506, in rem
a.k.a. M/V Spirit
a.k.a. M/V Elation,
INAN TAPTIK,
a foreign individual, in personam,

                                         Defendants - Appellees,


ABLE BOAT TRANSPORT, LLC,
a Florida Limited Corporation, in personam,

Defendant - Counter Claimant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 20, 2014)

ON PETITION FOR REHEARING

Before ED CARNES, Chief Judge, and RESTANI,[*] Judge, and ROBRENO,[**] District Judge.

PER CURIAM:

The previous opinion issued in this case, D & M Carriers LLC v. M/V Thor Spirit, No. 13-13280, 2014 WL 4667333 (11th Cir. Sept. 22, 2014), is hereby **VACATED**.  In its place we issue this revised opinion.  The petition for rehearing is otherwise **DENIED**.

This appeal arises out of a dispute concerning the overland transport of a 57-foot yacht.  Inan Taptik, a citizen and resident of Turkey, contracted with Able Boat Transport, LLC to have the yacht transported from Missouri to Florida.  Unknown to Taptik, Able Boat then subcontracted with D & M Carriers to

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

[**] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

transport the boat.  Because of a variety of unforeseen circumstances, D & M was able to haul the boat only to Georgia, and it did so at a cost that was well above the amount Taptik had agreed to pay in his contract with Able Boat.

Seeking to recover the costs it incurred, D & M filed suit in federal court asserting three claims:  an in rem claim against the yacht, a breach of contract claim against Able Boat, and a breach of contract claim against Taptik.[1]  After conducting a bench trial, the district court entered judgment in favor of Taptik and the vessel.  This is D & M's appeal.

I.

In 2011 Taptik purchased through a telephone auction a 57-foot Viking Sport Cruiser yacht — the Thor Spirit — that was located in Table Rock, Missouri.[2]  On March 24, 2011, he entered into an agreement with Able Boat to have the yacht transported from Missouri to Fort Lauderdale, Florida.  The contract provided that Able Boat would transport the vessel for a flat fee of $16,500, but it incorrectly noted that the boat had an overall height of only 13 feet 6 inches.  On March 25, 2011, Able Boat entered into a carrier contract with D & M to transport the boat from Missouri to Florida.  D & M agreed to haul the boat for a flat fee of

---

[1] While this litigation was pending, Able Boat filed for bankruptcy and the district court stayed the case as to it.  See 11 U.S.C. § 362(a)(1).  The claim against Able Boat is not at issue in this appeal.

[2] This opinion recounts the facts based on the district court's post-trial findings of fact that are undisputed by the parties.

3

$10,750. That agreement was premised on the assumption that the boat was no taller than fourteen feet.

On March 29, 2011, D & M truck driver Rocky Clark arrived with his tractor-trailer at the marina in Missouri where the Thor Spirit was located. Taptik was also present at the marina. Because Taptik did not speak any English, his employee and translator, Murat Varol, was with him. Clark introduced himself to Varol and handed him his D & M business card. Varol believed that Clark worked for Able Boat because Taptik's contract stated that Able Boat would transport the boat and Able Boat's managing partner had told Varol and Taptik that "his driver [was] coming to pick up the boat." While they were at the marina, Taptik never spoke to Clark or anyone else from D & M.

After the marina staff loaded the Thor Spirit onto his trailer, Clark realized that the yacht was not 13 feet 6 inches tall, as stated in the contracts, but was instead 17 feet 7 inches tall. The true height of the boat had a substantial impact on Clark's planned route because any load taller than 17 feet could not travel on the interstate. Based on the new height, Clark had to take a much longer and more circuitous route to Florida. He also had to hire escorts, conduct route surveys in several states, and obtain over-sized load permits for each state he would be passing through.

4

Because of the changed circumstances, on April 5, 2011, Able Boat modified its contracts with Taptik and D & M.  Taptik agreed to pay a flat rate of $38,000 to Able Boat for its services, although the modified contract also provided that the final cost could be as low as $36,000 "depending on regulation during transport."  Able Boat also modified its contract with D & M.  That contract provided that D & M would transport the boat to Florida for $28,000 plus the cost of any bucket trucks and police escorts that might be needed during transport.

Clark made slow progress because of the height of the Thor Spirit.  He could not drive on the interstate and his crew of escorts had to lift more than 20,000 power lines, tree limbs, and streetlights over the course of the trip.  He travelled only 90 to 120 miles per day instead of his usual pace of 400 miles per day.  He was also delayed waiting for permits to travel through various states with his load.  When he attempted to bring the boat into Florida, the state's department of transportation refused to give him permission to travel on the state's highways.  As a result, Able Boat directed Clark to deliver the boat to St. Mary's, Georgia.  It then notified Taptik and Varol that the boat could not enter Florida and that it would be brought to St. Mary's.[3]

---

[3] Varol flew from Turkey to the United States to recover the boat.  He obtained possession of the yacht and hired a captain to sail it down to its intended destination in Ft. Lauderdale.

5

After Able Boat directed Clark to deliver the boat to St. Mary's, D & M and Able Boat began discussing the extensive costs that D & M had incurred to pay for bucket trucks and escorts along its route. Taptik and Varol were not included in those discussions about the additional charges. On May 12, 2011, Able Boat submitted a bill to Taptik for all of the charges incurred by D & M, which came to $85,839.81. Neither Taptik nor Varol ever agreed to pay additional fees or costs above the $38,000 that had been agreed to in the modified contract with Able Boat.

D & M repeatedly sought payment from Able Boat for the extra costs Clark had incurred during transportation. Able Boat agreed to pay $35,097.81 and to split with D & M the cost of a route survey; however, Able Boat never paid D & M the promised amount. Instead, D & M received only $17,122. In an attempt to recover the full costs it had incurred, D & M filed a complaint in the Southern District of Florida seeking to establish a maritime lien on the Thor Spirit.[4] D & M contended that it was entitled to a maritime lien on the Thor Spirit because it had provided "necessaries" to the vessel by transporting it to Georgia.[5] D & M also asserted breach of contract claims against Taptik and Able Boat.

---

[4] The claim against the Thor Spirit led United States Marshals to seize the yacht in Ft. Lauderdale.

[5] Title 46 of the U.S. Code provides that "necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). For purposes of this appeal, we need not decide whether the services D & M provided to the Thor Spirit qualify as "necessaries" within the meaning of the statute.

6

The district court held a bench trial on the claims asserted against the Thor Spirit and Taptik.  It dismissed the breach of contract claim against Taptik based on improper service of process.  The court also concluded that D & M was not entitled to a maritime lien on the Thor Spirit because it had failed to prove that it had provided necessaries to the yacht "on the order of the owner or a person authorized by the owner."  See 46 U.S.C. 31342(a).

## II.

As an initial matter, we must determine whether we have jurisdiction to consider D & M's appeal even though its claim in this case against Able Boat has not yet been resolved.  "Ordinarily . . . an order adjudicating fewer than all the claims in a suit, or adjudicating the rights and liabilities of fewer than all the parties, is not a final judgment from which an appeal may be taken."  Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007).  Pursuant to Federal Rule of Civil Procedure 54(d), however, the district court entered a partial final judgment in favor of Taptik and the Thor Spirit.  See Fed. R. Civ. P. 54(d) (stating that a district court may enter a final judgment "as to one or more, but fewer than all, claims or parties" when the district court determines that there is "no just reason for delay").  In order for Rule 54(d) certification to be proper, two requirements must be satisfied.  First, the partial judgment must be "both 'final' and a 'judgment.'"  Lloyd Noland Found., Inc., 483

7

F.3d at 777 (quoting Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7, 100 S.Ct. 1460, 1464 (1980)).  Second, there must be "no 'just reason for delay' in certifying it as final and immediately appealable."  Id. (quoting Curtiss-Wright Corp., 446 U.S. at 8, 100 S.Ct. at 1465).

Both of those requirements are met in this case.  The district court's judgment in favor of Taptik and the Thor Spirit is a "final judgment" as to the claims against them because it fully disposed of all of the claims against those two defendants.  See id. at 777.  Nor is there any just reason to delay hearing D & M's appeal; the appeal does not depend on the resolution of any of the claims between D & M and Able Boat and it is unclear whether the claims between those two parties will ever be resolved.  Although Able Boat's bankruptcy case was closed in November 2012, neither D & M nor Able Boat has moved to lift the district court's stay of the claims involving Able Boat, and D & M has asserted that its claim against Able Boat was discharged in the bankruptcy proceedings.  Accordingly, the district court properly granted the Rule 54(b) certification.

## III.

D & M raises several issues on appeal.  First, D & M contends that it was entitled to a maritime lien because Able Boat qualified as a "master" or "the person entrusted with the management of the vessel at the port of supply" within the meaning of 46 U.S.C. § 31341.  Second, it contends that the district court

8

erroneously concluded that it was not entitled to a maritime lien because it had not provided necessaries upon the order of the vessel's owner or an agent of the owner. Third, it contends that the district court abused its discretion by not allowing D & M to serve Taptik with process the day that the bench trial began.

When a district court sitting in admiralty conducts a bench trial,[6] we review the court's factual findings for clear error and its conclusions of law de novo. Venus Lines Agency, Inc. v. CVG Int'l Am., Inc., 234 F.3d 1225, 1228 (11th Cir. 2000).  The clear error standard recognizes the trial court's "unique opportunity . . . to evaluate the credibility of witnesses and to weigh the evidence." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855, 102 S.Ct. 2182, 2189 (1982).  "It is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony," Hearn v. McKay, 603 F.3d 897, 904 (11th Cir. 2010) (alteration and quotation marks omitted), and "[w]e accord great deference to the district court's credibility determinations," United States v. Clay, 376 F.3d 1296, 1302 (11th Cir. 2004).  In a bench trial, the judge is "free to choose among alternative reasonable interpretations of the evidence," see United States v. Tampas, 493 F.3d 1291, 1298 (11th Cir. 2007), and

_____

[6] D & M's in rem claim, arising under 46 U.S.C. § 31342, conferred admiralty jurisdiction on the district court.  See Am. Dredging Co. v. Miller, 510 U.S. 443, 446–47, 114 S.Ct. 981, 985 (1994) ("An in rem suit against a vessel is, we have said, distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts.") (citing The Moses Taylor, 71 U.S. (4 Wall.) 411, 431 (1866)); The Rock Island Bridge, 73 U.S. (6 Wall.) 213, 215 (1867) ("The [maritime] lien and the proceeding in rem are, therefore, correlative—where one exists, the other can be taken, and not otherwise.").

its "choice between permissible views cannot be clear error," United States v. Ndiaye, 434 F.3d 1270, 1305 (11th Cir. 2006).  We will not disturb the district court's factual findings unless we are "left with the definite and firm conviction that a mistake has been committed."  Inwood Labs., Inc., 456 U.S. at 855, 102 S.Ct. at 2189 (quotation marks omitted).  When a district court refuses to extend the time a plaintiff has to properly serve a defendant under Federal Rule of Civil Procedure 4(m), we review that decision only for an abuse of discretion. Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132–33 (11th Cir. 2005).

## A.

D & M asserts that Able Boat had authority to obtain necessaries for the Thor Spirit because it qualified as either the yacht's "master" or "a person entrusted with the management of the vessel at the port of supply."  Under the Federal Maritime Lien Act, an individual is entitled to a lien on a vessel if he provides necessaries to the vessel "on the order of the owner or a person authorized by the owner," 46 U.S.C. § 31342, and certain individuals are presumed to have authority to obtain necessaries for a vessel, id. § 31341.  Those individuals include "the master" and "a person entrusted with the management of the vessel at the port of supply."  Id. § 31341(a)(2), (3).

In the district court, D & M never raised the issue of whether Able Boat had acted as the Thor Spirit's "master" or whether it had been "entrusted with the

10

management of the vessel at the port of supply." Instead, the sole issue D & M presented was whether Able Boat had acted as Taptik's "agent" and authorized the expenses that D & M incurred during transport. We have said again and again that we will not consider "an issue not raised in the district court and raised for the first time in an appeal." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks omitted); accord Hurley v. Moore, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."); Nyland v. Moore, 216 F.3d 1264, 1265 (11th Cir. 2000) (same); Provenzano v. Singletary, 148 F.3d 1327, 1329 n.2 (11th Cir. 1998) (same). Although we have the discretion to consider an argument that was not presented to the district court, we do so only when "special circumstances" exist. See Access Now, Inc., 385 F.3d at 1332 (listing five instances when we may consider an argument raised for the first time on appeal). None of those special circumstances is present here. Therefore, we decline to consider D & M's argument that Able Boat was authorized under 46 U.S.C. § 31341(a)(2), (3) to secure necessaries for the Thor Spirit.

## B.

Regarding the issue it did preserve, D & M contends that it was entitled to a maritime lien on the Thor Spirit because it provided necessaries upon the order of

11

the vessel's owner or an agent of the owner.[7]  See S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1482 (11th Cir. 1987) (recognizing, in an action to enforce a maritime lien, that a court must determine whether the party that secured "necessaries" for the vessel had authority to do so).  That contention challenges the district court's factual findings, so we review only for clear error.  See Venus Lines Agency, Inc., 234 F.3d at 1228.

The district court found that Taptik did not personally authorize D & M to transport the Thor Spirit to Florida or to provide the yacht with "necessaries" beyond the cost agreed on with Able Boat.  The trial court based its conclusion on Taptik's testimony that Able Boat was the only entity he authorized to transport the Thor Spirit after he was drawn to the company by its online advertising, as well as several undisputed facts.  First, Taptik signed a contract with Able Boat to transport the yacht, and he never entered into a contract with D & M.  Second, Able Boat never told Taptik that it had retained D & M as a subcontractor to transport the Thor Spirit, and Taptik thought that Able Boat would be the only entity entrusted with his boat.  Third, in his modified contract with Able Boat, Taptik agreed to pay only a flat rate of $38,000 to have his boat transported.  In

---

[7] D & M raised the question of whether Able Boat was an agent of the vessel for the first time in its petition for rehearing.  The issue is waived.  See United States v. Levy, 379 F.3d 1241, 1242 (11th Cir. 2004) ("This court repeatedly has refused to consider issues raised for the first time in a petition for rehearing.").  Even if it were not, D & M does not explain how we should analyze the question, apart from citing a few cases recognizing a "personification of the ship" doctrine.  For example, D & M does not explain how Able Boat could become the vessel's agent without Taptik's approval as the vessel's owner.

light of that testimony and those undisputed facts, the district court did not clearly

err when it concluded that Taptik did not personally authorize D & M to transport

the Thor Spirit and secure "necessaries" for the transportation.  See Inwood Labs.,

Inc., 456 U.S. at 855, 102 S.Ct. at 2189.

The district court also found that Taptik did not have an agent who

authorized D & M's expenditures.  That conclusion is a finding of fact that we

review only for clear error.  See Naviera Neptuno S.A. v. All Int'l Freight

Forwarders, Inc., 709 F.2d 663, 665 (11th Cir. 1983) ("Federal maritime law

embraces the principles of agency, and under those principles the existence of an

agency relationship is a question of fact.") (citation omitted); see also Archer v.

Trans/Am. Servs., Ltd., 834 F.2d 1570, 1572–73 (11th Cir. 1988) (noting that "the

existence of an agency relationship is a question of fact" that we review only for

clear error).  An agency relationship can be created in two ways.[8]  First, a principal

may create an agency relationship by vesting a person with "actual authority" to

---

[8] When assessing whether an agency relationship exists between an owner and a carrier, we depart from general agency principles in one limited circumstance and for one limited purpose.  When an owner hires a carrier and agrees to liability limits with that carrier, and the carrier then hires a subcontractor to perform part of the contract, we treat the carrier as the owner's agent — but only with respect to those liability limits.  The liability limits agreed upon by the owner and carrier then apply to the subcontractor even though the owner never came to an agreement with the subcontractor about the subcontractor's liability.  See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 33–34, 125 S. Ct. 385, 398–99 (2004) (holding that the carrier was the owner's agent for the "single, limited purpose" of determining limitations on the liability of the carrier's downstream subcontractor and that it would be "unsustainable" to find that the carrier was "automatically empowered to be the cargo owner's agent in every sense"); Werner Enters., Inc. v. Westwind Mar. Int'l, Inc., 554 F.3d 1319, 1323–26 (11th Cir. 2009) (applying the Kirby rule).

13

make decisions that will have legal consequences for the principal. See Restatement (Third) of Agency § 3.01 (2006). "Actual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." Id. An agency relationship may also be created through "apparent authority." See id. § 3.03. "Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." Id. "Apparent authority" does not exist unless the principal indicates (through words or conduct) to the third party that another person is authorized to act as the principal's agent. See id.

The district court concluded that Able Boat could not have authorized on Taptik's behalf the expenditures that D & M incurred because Able Boat was not Taptik's agent. First, the court found that Able Boat did not have express authority to act as Taptik's agent. That finding was based on two pieces of evidence: (1) Taptik's testimony that he never authorized Able Boat to act as his agent, and (2) the contract between Taptik and Able Boat, which did not contain any language authorizing Able Boat to act as Taptik's agent. Second, the court found that Able Boat lacked apparent authority to act as Taptik's agent. The court based that

14

finding on evidence presented at trial showing that Taptik never spoke to any person affiliated with D & M. As a result, D & M could not have believed, based on any representation from Taptik, that Able Boat was authorized to act as his agent. See Restatement (Third) of Agency § 3.03. After viewing the record as a whole, we are not "left with the definite and firm conviction" that Able Boat was authorized to act as Taptik's agent. See Inwood Labs., Inc., 456 U.S. at 855, 102 S.Ct. at 2189. The district court's finding was not clearly erroneous.

The district court also found that Varol was not Taptik's agent, and therefore he could not have authorized on Taptik's behalf the additional expenses that D & M incurred during transport. The court based that conclusion on testimony from Taptik and Varol that: (1) Taptik involved Varol in his transaction only for the limited purpose of acting as his English language translator, (2) Taptik instructed Varol "never to do anything without asking him first," and (3) Varol never represented to D & M that he was Taptik's agent. That testimony, which the district court expressly credited, supports its conclusion that Varol did not have express authority to act as Taptik's agent for purposes of authorizing D & M's expenditures. The district court also found that Varol lacked apparent authority to act as Taptik's agent. That conclusion is supported by testimony, which the district court credited, that Taptik could not have represented to D & M that Varol was his agent because he never spoke to any person affiliated with D & M. In light of the

15

record as a whole, the district court did not clearly err in concluding that Varol was not Taptik's agent for purposes of authorizing D & M to secure necessaries for the Thor Spirit.

Because the district court did not clearly err in finding that D & M's expenditures were not authorized by Taptik or his agent, D & M was not entitled to a maritime lien on the Thor Spirit. See S.E.L. Maduro (Fla.), Inc., 833 F.2d at 1482.

## C.

Finally, although D & M does not challenge the district court's conclusion that Taptik was never properly served, it contends that the district court abused its discretion by not allowing it to serve Taptik with process the day that the bench trial began — nearly seventeen months after the complaint had been filed. Under the Federal Rules of Civil Procedure, a plaintiff usually has 120 days to serve process on a defendant.[9]  Fed. R. Civ. P. 4(m).  The district court has the discretion to extend that time limit, even where the plaintiff fails to show "good cause" for its failure to serve the defendant within the required 120 days. Horenkamp, 402 F.3d at 1132.

---

[9] That time limit does not apply when a plaintiff is attempting to serve process on an individual in a foreign country. See Fed. R. Civ. P. 4(f). But see Lozano v. Bosdet, 693 F.3d 485, 489 (5th Cir. 2012) ("Rule 4(f) authorizes a without-prejudice dismissal when the court determines in its discretion that the plaintiff has not demonstrated reasonable diligence in attempting service.").  However, it is undisputed that D & M never attempted to serve Taptik in Turkey.

16

In this case, the district court did not abuse its discretion when it refused to allow D & M to serve Taptik at trial nearly a year and a half after the complaint had been filed.  D & M never asked the court for leave to serve Taptik beyond the 120-day time period, and it never attempted to show why it had delayed 17 months.  Taptik challenged D & M's service of process as early as July 2011, which was 16 months before the bench trial, but D & M did not take any steps to perfect service on him until he made a special appearance in the United States to testify at the trial in this case.  D & M did not exercise reasonable diligence in attempting to properly serve Taptik and it has failed to show good cause for its delay.  Therefore, the district court did not abuse its discretion when it prevented D & M from serving Taptik on the morning of the bench trial.  Because the district court did not abuse its discretion in preventing D & M from serving Taptik at trial and D & M does not challenge the finding that Taptik was never properly served, the district court did not err when it dismissed D & M's breach of contract claim against Taptik.

## IV.

For the reasons discussed, we affirm the district court's judgment in favor of Taptik and the Thor Spirit.

17

**AFFIRMED.**[10]

---

[10] This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous agreement of the panel under 11th Cir. R. 34-3(f).